2020 IL App (1st) 200404-U

FIRST DIVISION
March 10, 2020

No. 1-20-0404

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| MARCUS LEWIS, | ) | |
| | ) | Appeal from the |
| Petitioner-Appellant, | ) | Circuit Court of |
| | ) | Cook County |
| v. | ) | |
| | ) | 20 COEL 2 |
| THE ILLINOIS STATE BOARD OF ELECTIONS, | ) | |
| sitting as the duly constituted STATE OFFICERS | ) | Honorable |
| ELECTORAL BOARD, *et al.*, | ) | Alfred Paul, |
| | ) | Judge Presiding. |
| Respondents-Appellees. | ) | |

JUSTICE PIERCE delivered the judgment of the court.
Justices Connors and Walker concurred in the judgment.

## ORDER

¶ 1   *Held*:   Petitioner's objection to a candidate's nominating papers was properly dismissed where the failure to insert or number one petition signature sheet could not serve as a basis to invalidate the nominating papers.

¶ 2   This is an expedited appeal from the denial of a petition for judicial review of a decision

of the Illinois State Board of Elections relative to the March 17, 2020, general primary election.

For the reasons that follow, we affirm the decision of the Board.

¶ 3                                    BACKGROUND

¶ 4     Respondent Robin Kelly filed nominating papers with the Cook County Clerk to appear on the Democratic Party primary ballot for representative in Congress for the State of Illinois Second Congressional District at the March 17, 2020, general primary election. On December 9, 2019, petitioner, Marcus Lewis, filed an objection to Kelly's nominating papers with respondent, Illinois State Board of Elections, seeking the removal of Kelly's name from the ballot.

¶ 5     In his objector's petition, Lewis alleged that Kelly's nominating papers were consecutively numbered 1-70, there was no petition signature sheet 71, and the remaining petition signature sheets were consecutively numbered 72-281. As such, Lewis argued that all petition signature sheets after sheet 70 were misnumbered and should be stricken under section 10-4 of the Illinois Election Code (10 ILCS 5/10-4 (West 2018)), and that without these sheets the nominating papers contained fewer than the required number of signatures.

¶ 6     Kelly filed a motion to dismiss the objection. Kelly stated that the applicable section of the Election Code was 10 ILCS 5/7-10(b) (West 2018). Under Section 7-10(b), Kelly was required to submit 1184 valid signatures, and Kelly's nominating papers contained over 2600 signatures. Kelly argued that even if sheet 71 was missing from the nominating papers, she filed more than the required number of signatures and, under *King v. Justice Party*, 284 Ill. App. 3d 886, 888 (1996), there was no legal basis to support Lewis's argument that one missing sheet required all subsequent misnumbered petition signature sheets to be discarded.

¶ 7     The Board held a hearing on December 27, 2019. Lewis and Kelly presented evidence as to whether sheet 71 was missing from the nominating papers at the time of filing. At the hearing, certain undisputed facts were developed. It is undisputed that the parties were each given a scanned

copy of the nominating papers and that each of the scanned copies provided to the parties did not contain sheet 71. It is undisputed that the copies used at a records examination in another case involving the same candidate, *Dockrey v. Kelly*, 19 SOEB GP 510, did not contain sheet 71. It is undisputed that Bernadette M. Matthews, Assistant Executive Director and Acting General Counsel for the Board, sent an e-mail to Lewis and Kelly stating that she had Board staff review Kelly's original nominating papers and the staff log that was created while processing the nominating papers at the time of filing. Both documents showed that sheet 71 was included in the nominating papers and the petition signature sheets were bound in order. In her e-mail, Matthews concluded that after filing, when Kelly's nominating papers and petition signature sheets were scanned for processing, sheet 71 most likely stuck to sheet 70 and was not included in the scan in error. It is also undisputed that Lewis's objector's petition contained an insufficient number of objections to specific signatures to invalidate the nominating papers. Accordingly, the Board did not order a records examination.

¶ 8    The hearing officer subsequently released her written report and recommendation that Lewis's objection should be found legally and factually insufficient. The hearing officer recommended that the Board dismiss Lewis's objector's petition because there is "simply no case law that requires or permits the wholesale striking of nominating papers when one sheet is missing." Assuming *arguendo* that Lewis's objector's petition stated a valid basis for invalidating Kelly's nominating papers, the hearing officer recommended that the Board overrule Lewis's objection because the evidence presented at the hearing, including evidence from a review of the petition signature sheets and the testimony of a witness who was present when Kelly's nominating papers were filed, established that sheet 71 existed when the papers were filed. Finally, the hearing

officer noted that "no evidence of any kind" was presented by Lewis in support of his generalized fraud claims.

¶ 9    On January 9, 2020, over Lewis's objection, the Illinois State Board of Elections unanimously adopted the recommendation of the hearing officer and ruled that Lewis's objector's petition failed to state a legal basis for invalidating Kelly's nominating papers. The Board ruled that Kelly's name would be certified for inclusion on the general primary election ballot. Also, on January 9, the Board issued its written decision finding that Lewis's objector's petition failed to state a claim upon which Kelly's nominating papers could be invalidated and dismissed the objector's petition.

¶ 10    Lewis filed a petition for judicial review of the Board's decision in the circuit court on January 13, 2020. Kelly filed a motion to dismiss for lack of subject-matter jurisdiction on January 23, 2020. The circuit court granted Kelly's motion on January 31, 2020, ruling that it did not have subject-matter jurisdiction due to Lewis's failure to file proof of service along with his petition for judicial review within five days of the Board's final decision, as required by 10 ILCS 5/10-10.1 (West 2018). Lewis appealed, and we reversed the judgment of the circuit court, finding that Lewis did not need to file proof of service within five days of the Board's final order as long as his petition for judicial review was filed within five days of the entry of the final order. *Lewis v. Illinois State Board of Elections*, 2020 IL App (1st) 200201-U. We remanded to the circuit court for a hearing on the merits of Lewis's petition for judicial review.

¶ 11    On February 26, 2020, the circuit court ordered the parties to brief the merits of Lewis's petition for judicial review. On February 28, 2020, the circuit court "denied and dismissed"

Lewis's petition for judicial review, finding that the Board's decision was not against the manifest weight of the evidence and that the Board's decision was not clearly erroneous.

¶ 12   Lewis filed a timely notice of appeal. We allowed Lewis's motion to expedite this appeal and both parties have made submissions to the court in support of their respective positions. For the reasons that follow, we affirm the decision of the Board.

¶ 13                                    ANALYSIS

¶ 14   We note that the record reflects some confusion as to the standard of our review. The circuit court affirmed the Board's decision and found that the Board's decision was not against the manifest weight of the evidence or clearly erroneous. In their submissions to this court, both parties argue that we should determine whether the Board's decision was against the manifest weight of the evidence. Kelly also argues that the dismissal of Lewis's objection presents a mixed question of law and fact, and that we should find that the decision of the Board was not clearly erroneous.

¶ 15   On appeal, we review the decision of the electoral board, not the circuit court. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 211 (2008). The Board accepted the recommendation of the hearing officer, and in a written decision stated that the objection was dismissed because Lewis failed to state a legal basis for invalidating Kelly's nominating papers. The only issue before the Board on Kelly's motion to dismiss Lewis's objection was whether the misnumbering of one petition signature sheet submitted with a candidate's nominating papers can serve as a legal basis for removal of a candidate's name from the ballot. This is a question of law that we review *de novo*. See *King v. Justice Party*, 284 Ill. App. 3d 886, 889 (1996). "Where the historical facts are admitted or established, but there is a dispute as to whether the governing legal provisions were interpreted correctly by the

5

administrative body, the case presents a purely legal question for which our review is *de novo*." *Jackson v. Board of Election Commissioners of City of Chicago*, 2012 IL 111928, ¶ 47.

¶ 16     For a congressional candidate's name to appear on the general primary ballot, Section 7-10 of the Election Code provides that a nomination petition must be filed on the candidate's behalf. The signature sheets contained in the nomination petition "shall *** be numbered consecutively." 10 ILCS 5/7-10 (West 2018). The purpose of the sheet numbering requirement is to prevent tampering and preserve the integrity of the nomination petitions and the election process. *Jones v. Dodendorf*, 190 Ill. App. 3d 557, 562 (1989). Although the sheet numbering provision is mandatory, it can be satisfied by substantial compliance "when the invalidating charge concerns a technical violation of the statute that does not affect the legislative intent to guarantee a fair and honest election." *Reynolds v. Champaign County Officers Electoral Board*, 377 Ill. App. 3d 1164 (2008).

¶ 17     Lewis argues that because sheet 71 is missing from Kelly's nominating papers, sheets 72-281 in the nominating papers must also be considered misnumbered in a "domino effect." Thus, Lewis claims that all sheets after sheet 70 must be stricken from the nominating papers because they are effectively misnumbered. Lewis cites to *Jones v. Dodendorf*, 190 Ill. App. 3d 557 (1989), but *Jones* does not support Lewis's argument. In *Jones*, we affirmed the electoral board's decision that the candidates' names would not be printed on the ballot where the candidates submitted nominating papers that contained no numbered petition signature sheets. The *Jones* court found that the candidates did not substantially comply with the section 10-4 numbering requirement because they did not number any of the sheets in their nominating papers, and that it could not

noncompliance could not be excused where "there was simply no attempt made to comply with the numbering requirement." *Id.* at 561.

¶ 18     The *Jones* court specifically distinguished its holding from the facts in *Williams v. Butler*, 35 Ill. App. 3d 532, 535 (1976). In *Williams*, the candidate submitted nominating papers with petition signature sheets numbered 1 through 323, but without a sheet numbered 191. The *Williams* court held that the omission of sheet 191 was not a basis for striking the remaining sheets in the nominating papers under section 7-10 of the Election Code. *Id.* The *Jones* court affirmed the holding in *Williams*, finding that "the failure to number *a* page is far less significant than the failure to number *any* of the pages." (Emphasis in original.) 190 Ill. App. 3d at 561.

¶ 19     Similarly, the court in *King v. Justice Party* relied on *Jones* and *Williams* to determine that removal of a candidate's name from the ballot was not required by section 10-4 where the candidate submitted nominating papers that contained 4427 petition signature sheets, of which 16 were not numbered and sheets numbered 1791 and 1792 were missing. 284 Ill. App. 3d at 890. The court followed the holding in *Jones* that "the failure to insert or number a single page is a mere technicality which does not invalidate a petition." *Id.* (citing *Jones v. Dodendorf*, 190 Ill. App. 3d 557, 561 (1989)).

¶ 20     *Jones*, *Williams*, and *King* stand for the proposition that a candidate's failure to insert or number one of many petition signature sheet(s) in their nominating papers cannot serve as a legal basis for invalidating that candidate's nominating papers and does not prevent that candidate's name from being printed on the ballot. We therefore find that under section 7-10, Kelly's nominating papers are not invalid because of one missing or misnumbered petition signature sheet such that her name must be removed from the ballot. Accordingly, we affirm the Board's decision

to dismiss Lewis's objection as failing to state a legal basis for invalidating Kelly's nominating papers.

¶ 21 Lewis also argues that the Board's decision should be reversed because it is against the manifest weight of the evidence. Lewis argues that the Board erroneously found that sheet 71 was not missing from Kelly's nomination petition. Our review of the Board's decision shows that the Board made no factual findings about the existence of sheet 71 or its inclusion in Kelly's nominating papers. Therefore, we will not review the Board's decision under the manifest weight of the evidence standard.

¶ 22 Finally, Lewis argues that the Board's decision was a denial of his rights "under the United States and Illinois Constitutions." Lewis states that the hearing officer's decision to deny him a records examination of the nominating papers deprived him of due process but he fails to cite to any law or authority to support this claim. Points not argued are forfeited. Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018). Further, our review of the record shows that Lewis's objection was dismissed as legally insufficient after a hearing, and thus the Board found that there was no need for a records examination or to make factual findings in this matter. Because we affirm the Board's ruling on the motion to dismiss Lewis's objection, we also find no error in the Board's decision to not order a records examination.

¶ 23                                    CONCLUSION

¶ 24 For the foregoing reasons, the decision of the electoral board is affirmed.

¶ 25 Affirmed.